

SO ORDERED.

Robert J. Faris
United States Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF HAWAII

| | |
|---|---|
| In re<br><br>STERLING G. HIGASHI,<br><br>    Debtor. | Case No. 15-00444<br>Chapter 7 |
| HALE TAKAZAWA,<br><br>    Plaintiff,<br><br>  vs.<br><br>STERLING G. HIGASHI,<br><br>    Defendant. | Adv. Pro. No. 15-90033 |

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

The trial of this adversary proceeding was held on May 24-26, 2016. Ronald K. K. Sakimura represented plaintiff and Robert K. Matsumoto represented defendant.

Based on the evidence, I make the following

## FINDINGS OF FACT:

Until January 2010, Halawa Pacific, a Hawaii limited partnership, owned certain commercial real property located at 99-1374 Koaha Place, Halawa Business Park, Aiea, Hawaii, 96701.

In 2006, Electric Vehicle Technologies, LLC ("EVT") leased Bay Nos. 5 and 6 (the "EVT Premises") in Halawa Pacific's warehouse. The lease was amended in 2008. Sterling Higashi, the manager of EVT, personally guaranteed the obligations of EVT under the EVT lease.

In January 2010, Halawa Pacific sold the Halawa Property to Active Sportswear, Inc. At that time, EVT owed about $90,000 of delinquent rent and was not paying current rent as it became due.

In March 2010, Active Sportswear demanded that EVT cure its default and gave notice that, if EVT did not cure its default, the lease would be terminated.

On March 31, 2010, Mr. Higashi met with Active Sportswear's attorney and property manager to discuss the delinquency. Mr. Higashi wanted more time to cure the delinquent rent. The amount of the delinquency was undisputed; Active Sportswear's representatives showed Mr. Higashi a ledger setting forth the amount of delinquent rent claimed by Active Sportswear, and Mr. Higashi did not question that amount.

Mr. Higashi agreed that EVT would immediately pay the rent for February,

U.S. Bankruptcy Court - Hawaii    #15-90033   Dkt # 136   Filed  06/07/16   Page 2 of 13

March, and April 2010, pay its current rent for subsequent months in a timely manner, and pay off the delinquent rent for months prior to February 2010 in 24 monthly installments of $4,000 each, beginning on September 15, 2015. He agreed that he and his wife, Victoria Higashi, would sign a promissory note in favor of Active Sportswear evidencing the agreement to repay the delinquent rent. Active Sportswear insisted that Mrs. Higashi sign the note because she held title to the residence in which Mr. and Mrs. Higashi lived. The promissory note was in amount of $95,269.60, which was equal to the amount of delinquent rent owed for months prior to February 2010.

On March 31, 2010, Active Sportswear's attorney sent Mr. Higashi a letter confirming the agreement and enclosing a copy of the promissory note for signature by Mr. and Mrs. Higashi. Mr. Higashi countersigned the letter on or about April 7, 2010.

Mr. Higashi claims that he was "'overmatched' in terms of knowledge and experience in the areas of real estate, financing, and the like." There is no evidence, however, that this disparity made any difference. Mr. Higashi knew what the promissory note meant and knew what would happen if he did not make payments on time.

At trial, Mr. Higashi argued that, when he entered into the agreement, he was subject to duress. There is no evidence, however, that Active Sportswear made any

3

U.S. Bankruptcy Court - Hawaii   #15-90033   Dkt # 136   Filed  06/07/16   Page 3 of 13

demands or threats that it was not legally entitled to make.

Mr. Higashi argues that the amount of delinquent rent was actually less than the amount of the promissory note and that the landlord failed to give EVT credit for certain payments it had made. I believe the testimony of the property manager that the amount is correct. If the amount of the promissory note were wrong, Mr. Higashi could, should, and would have challenged it before signing.

On April 8, 2010, Mr. Higashi delivered to Active Sportswear's attorney the promissory note bearing purported signatures of Mr. and Mrs. Higashi. Active Sportswear believed that the signatures were genuine, and had no reason to suspect otherwise.

Unbeknownst to Active Sportswear and Mr. Takazawa (until many months later), Mr. Higashi forged Mrs. Higashi's signature on the promissory note. He denies forging his wife's signature, but I do not believe that denial. The signature was undoubtedly forged, and he is the only remotely plausible suspect. He, and only he, had the motive to do so. Unless he produced his wife's signature on the promissory note, EVT would have been evicted and he would have been out of business. He also had the opportunity to do so; he had access to numerous examples of his wife's signature which he could have copied. Further, the numerous contradictions in his sworn testimony and discovery responses make it difficult to give full credence to his trial testimony.

4

Mr. Higashi testified that he gave the unsigned promissory note to a temporary part-time worker in the EVT office and asked her to call Mrs. Higashi to come to the office and sign the note. He further testified that he found the signed promissory note in the EVT office the following morning, and that his wife did not speak to him about the note. This testimony is false. Mr. Higashi acknowledged that his wife knew very little about the EVT business, did not know he had guaranteed the rent obligation, did not know that the rent was delinquent, and did not know that he had agreed that both he and his wife would sign the note. It is not remotely believable that Mr. Higashi would have entrusted a temporary worker with the delicate task of asking his wife to sign a very large promissory note evidencing a debt about which his wife knew nothing. It is even less believable that Mrs. Higashi, an intelligent and strong-willed person, would have signed such a note without asking her husband any questions about it.

When he delivered the promissory note to Active Sportswear, Mr. Higashi implicitly represented that the signatures were all genuine. He knew, however, that Mrs. Higashi's signature was not genuine (because he had forged it). He intended to induce Active Sportswear to rely on the signatures; he did not want Active Sportswear to evict EVT from its business premises.

In reliance on the agreement and the signed promissory note, Active Sportswear did not take immediate action to collect the delinquent rent or to recover possession of

U.S. Bankruptcy Court - Hawaii    #15-90033    Dkt # 136    Filed  06/07/16    Page 5 of 13

the EVT premises. Because Active Sportswear did not know or have any reason to know that the signatures on the promissory note were not genuine, Active Sportswear's reliance was justifiable.

EVT failed to pay the rent for May 2010. As a result, following due notice, Active Sportswear terminated the lease, reentered the EVT premises, and took possession of those premises on May 25, 2010.

In June 2011, Active Sportswear assigned the promissory note to plaintiff Hale Takazawa. This was done because most of the delinquent rent evidenced by the promissory note accrued while Mr. Takazawa's company, Halawa Pacific, owned the property.

On June 28, 2011, Mr. Takazawa's attorney sent a demand letter to EVT and Mr. and Mrs. Higashi, demanding payment of the amounts due under the promissory note. On or about July 7, 2011, Mrs. Higashi called Mr. Takazawa's attorney and claimed that she did not sign the promissory note. This was the first time that Active Sportswear or Mr. Takazawa had any reason to suspect that the signature on the note purporting to be Mrs. Higashi's was not genuine.

In November 2011, Mr. Takazawa sued Mr. and Mrs. Higashi and EVT in state court. In an order denying Mr. Takazawa's motion for summary judgment, the court held that Mrs. Higashi had not signed the promissory note.

In June 2014, the parties entered into a settlement agreement. The settlement

U.S. Bankruptcy Court - Hawaii   #15-90033   Dkt # 136   Filed  06/07/16   Page 6 of 13

provided for the entry of a stipulated judgment against Mr. Higashi and EVT on the promissory note. The amount of the stipulated judgment is consistent with the amount of the promissory note, which in turn is consistent with the amount of delinquent rent claimed by Mr. Takazawa (and not consistent with Mr. Higashi's claim that the rent was overstated). That judgment was entered on July 7, 2014.

If Mrs. Higashi's signature on the promissory note were genuine, Mr. Takazawa could have obtained a judgment against both Mr. and Mrs. Higashi and enforced it against real property in which Mrs. Higashi had interests. The value of Mrs. Higashi's interest in those properties, less senior encumbrances, is probably greater than the amount owed to Mr. Takazawa. Therefore, if Mrs. Higashi had signed the promissory note, Mr. Takazawa probably could have recovered his entire claim.

Based on these findings of fact, I draw the following

## CONCLUSIONS OF LAW

### I. Jurisdiction

The court has personal jurisdiction over the parties and jurisdiction of the subject matter. The bankruptcy court has statutory and constitutional power to enter a final judgment. Venue is proper in this district.

### II. Section 523(a)(2)(A)

A chapter 7 discharge does not discharge an individual from any debt for money to the extent that the debtor obtained it by "false pretenses, a false

7

representation, or actual fraud . . . ."[1]

Exceptions to discharge must be strictly construed in favor of the debtor in order to effectuate the Bankruptcy Code's goal of giving debtors a fresh start.[2]

"False pretenses, a false representation, or actual fraud" does not always require an express misrepresentation. For example, "a debtor's misleading conduct intended to convey an inaccurate impression may constitute 'false pretenses.'"[3] Further, the Supreme Court recently ruled that the term "actual fraud" includes forms of fraud, such as fraudulent conveyance schemes, that can be effected without any false representation.[4] Therefore, section 523(a)(2)(A) encompasses more than just common law fraud.[5]

---

[1] 11 U.S.C. § 523(a)(2)(A).

[2] *Caneva v. Sun Communities Operating Ltd. P'ship (In re Caneva)*, 550 F.3d 755, 761 (9th Cir. 2008).

[3] *Kane v. Torres (In re Torres)*, Adv. No. 10-90005, 2011 WL 381038, at *5 (Bankr. D. Haw. Feb. 2, 2011)(citing *In re Felton*, 197 B.R. 881, 889 (N.D.Cal.1996)(conduct creating a false pretense or false representation can justify nondischarge under section 523(a)(2))); *see also In re Russell*, 203 B.R. 303, 312 (Bankr. S. D. Cal. 1996) "[F]alse representation' is express misrepresentation, while 'false pretense' refers to implied misrepresentation of conduct intended to create and foster false impression.")

[4] *Husky International Electronics, Inc. v. Ritz*, 136 S. Ct. 1581, 1586 (2016)(stating that Congress did not intend "actual fraud" to mean the same thing as "a false representation").

[5] *Husky* implicitly overrules earlier Ninth Circuit decisions holding (or implying) that section 523(a)(2)(A) is limited to common law fraud. *See In re Ettell*, 188 F.3d 1141, 1144 (9th Cir. 1999); *In re Eashai*, 87 F.3d 1082, 1087 (9th Cir. 1996). *Husky* also implicitly overrules decisions that the terms "false pretenses," "false representation," and "actual fraud" are synonymous. *See e. g. In re Miller*, 310 B. R. 185, 201-02 (Bankr. C. D. Cal. 2004)("[U]nder Ninth Circuit law, the terms 'false pretenses' and 'false representation' have the same meaning in Section 523(a)(2)(A) as the term 'actual fraud.' In consequence, they cannot provide a basis independent of actual fraud, for

U.S. Bankruptcy Court - Hawaii   #15-90033   Dkt # 136   Filed  06/07/16   Page 8 of 13

But common law fraud remains the paradigm case under section 523(a)(2)(A). Thus, a creditor can prevail by proving five elements:

(i) Misrepresentation, fraudulent omission, or the debtor's deceptive conduct;

(ii) Knowledge of the falsity or deceptiveness of his statement or conduct;

(iii) An intent to deceive;

(iv) Justifiable reliance by the creditor on the debtor's statement or conduct; and

(v) Damage to the creditor proximately caused by its reliance on the debtor's statement or conduct.[6]

The creditor must prove these elements by a preponderance of the evidence.[7]

Forgery constitutes a false representation (or a false pretense). Forgery is "[t]he act of fraudulently making a false document or altering a real one to be used as if genuine."[8] Forging a signature of another person can satisfy the first element of section 523(a)(2)(A).[9]

---

finding a debt nondischargeable.").

[6] *In re Deitz*, 760 F.3d 1038, 1050 (9th Cir. 2014)(citing *Omey v. Weinberg (In re Weinberg)*, 410 B.R. 19, 35 (9th Cir. BAP 2009).

[7] *Grogan v. Garner*, 498 U.S. 279 (1991).

[8] Black's Law Dictionary (10th ed. 2014); *see also Maui Finance Co. v. Han*, 34 Haw. 226, 1937 WL 4450 (Haw. Terr. 1937).

[9] *See e.g., C&W Asset Acquitition. LLC, v. Feagins (In re Feagins)*, 439 B. R. 165, 174 (Bankr. D. Hawaii 2010); *In re O'Brien*, 247 B.R. 583, 589-90 (Bankr. D. R. I. 2000); *In re Rudicil*, 123 B.R. 778, 780 (Bankr. N. D. Ohio 1991), *aff'd* 983 F.2d 1065 (6th Cir. 1992); *In re*

A creditor acts in "justifiable reliance" on a debtor's misrepresentation if he did not have notice of the debtor's fraud.[10] Justifiable reliance is a lower standard of care than reasonable reliance. Under the justifiable reliance standard, the creditor may rely on a misrepresentation even if a reasonable investigation would have uncovered the fraud.[11] But the creditor may not succeed in a section 523(a)(2)(A) action if the creditor had notice of the fraud.[12] The inquiry will thus focus on whether the falsity of the representation was or should have been readily apparent to the individual to whom it was made.[13]

Mr. Takazawa has met his burden of proving all five elements.

Mr. Higashi forged Mrs. Higashi's signature on the promissory note. When Mr. Higashi delivered the promissory note to Active Sportswear, he implicitly represented that both his signature and Mrs. Higashi's signature were genuine. But Mr. Higashi knew that his wife's signature was not genuine because he forged it. Mr. Higashi intended to induce Active Sportswear's reliance on the signatures because he did not want EVT to be evicted. In reliance on the signed promissory note, Active

---

*Vanderloos*, 64 B.R. 813, 816-17 (Bankr. D. Mont. 1986).

[10] 11 U.S.C. § 523(a)(2)(A); *Field v. Mans*, 516 U. S. 59, 69–76 (1995); *Citibank (South Dakota), N.A. v. Eashai (In re Eashai)*, 87 F.3d 1082, 1090–91 (9th Cir.1996).

[11] *In re Eashai*, 87 F.3d at 1089.

[12] *Id.*

[13] *In re Ramirez*, 2015 WL 4480901, at *6 (Bankr. D. Haw. July 21, 2015).

U.S. Bankruptcy Court - Hawaii   #15-90033   Dkt # 136   Filed  06/07/16   Page 10 of 13

Sportswear did not take immediate action to collect the delinquent rent or re-take possession of the premises. Its reliance on Mr. Higashi's representation was justifiable because Active Sportswear did not know or have any reason to know that the signatures were not genuine. Likewise, Mr. Takazawa justifiably relied on the signatures on the promissory note when Active Sportswear assigned it to him.

Mr. Higashi argues that Active Sportswear could have protected itself by insisting that Mrs. Higashi's signature be notarized or by obtaining mortgages on Mrs. Higashi's properties. The justifiable reliance standard does not require the creditor to take such actions. There is no dispute that Active Sportswear and Mr. Takazawa did not know (until much later) and had no reason to suspect that Mrs. Higashi's signature was forged. That is enough to meet the test of justifiable reliance.

## III. Duress

Mr. Higashi argued at trial that he was subject to duress and had no choice but to sign the promissory note. I disagree.

Economic duress occurs when a person subject to a wrongful act, such as a threat to withhold payment of an acknowledged debt, must succumb to the demands of the wrongdoer or else suffer financial ruin.[14] Mr. Higashi claimed in his trial brief and declaration that he was "under extreme pressure to agree to the rather harsh terms

---

[14] *Navellier v. Sletten*, 262 F.3d 923, 940 (9th Cir. 2001)(citing *Sheehan v. Atlanta Intern. Ins. Co.*, 812 F.2d 465, 469 (9th Cir. 1987).

11

of [Active Sportswear], or face imminent and hasty eviction,"[15] and was "'overmatched' in terms of knowledge and experience in the areas of real estate, financing, and the like."[16] There is no evidence that Active Sportswear made any demands or threats that it was not legally entitled to make, and he undoubtedly understood the documents he signed. Thus, there was no duress.

## IV.  Amount of Damages

Mr. Higashi contests the amount of delinquent rent and argues that it is less than the amount of the promissory note because the landlord failed to give EVT credit for certain payments. I have rejected the factual basis for this contention. If EVT had made payments for which it did not receive credit, Mr. Higashi would have said so when he negotiated the promissory note, and again when he negotiated the amount of the stipulated judgment. Thus, Mr. Takazawa suffered damages in the amount of the promissory note, $95,269.60, which was equal to the amount of delinquent rent owed for months prior to February 2010.

## V.  Effect of Settlement

Mr. Higashi argues that the June 2014 settlement agreement bars Mr. Takazawa's contentions under section 523(a)(2). As I have explained in pretrial rulings, a creditor can maintain an action under section 523(a)(2) even if there was a

---

[15] Dkt. 107 at 9.

[16] Dkt. 106 at 6.

12

prebankruptcy settlement and stipulated judgment that do not include findings or recitals of fraud.[17] The debtor can argue that the fact that the creditor agreed to settle the claims without such findings or recitals means that the creditor does not really believe that there was fraud, but the evidence in this case proves otherwise. Therefore, the debt is nondischargeable pursuant to section 523(a)(2)(A).

## CONCLUSION

Mr. Takazawa has carried his burden of proof under section 523(a)(2)(A)'s exception to the discharge. The debt owed by Mr. Higashi to Mr. Takazawa is nondischargeable. Counsel for Mr. Higashi shall present a proposed separate judgment.

## END OF ORDER

---

[17] *Archer v. Warner*, 538 U. S. 314 (2003).

U.S. Bankruptcy Court - Hawaii   #15-90033   Dkt # 136   Filed  06/07/16   Page 13 of 13